SECURITIES AND EXCHANGE COM-
MISSION, Appellee,

v.

Harold P. KOENIG et al., Appellants.

No. 208, Docket 72–1745.

United States Court of Appeals,
Second Circuit.

Argued Sept. 22, 1972.

Decided Nov. 3, 1972.

Theodore Sonde, Washington, D. C. (Walter P. North, Robert M. LaPrade, Frederick L. White, Rodney K. Vincent, Washington, D. C., on the brief), for appellee.

Murray M. Chotiner, Washington, D. C. (Delson & Gordon, New York City, and Reeves & Harrison, Washington, D. C., on the brief), for appellants.

Miller & Summit, New York City, on the brief, for amici curiae.

Before SMITH, KAUFMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York preliminarily enjoining and restraining defendants-appellants from violations of various provisions of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., § 78m, and certain Rules promulgated thereunder.[1] In addition, the court below appointed a limited receiver for the corporate defendant Ecological Science Corporation (hereinafter "ECO"). In its opinion, the district court noted that after an "exhaustive review of the entire record" it had based its conclusions of law on undisputed facts and for that reason it did not find it necessary to hold an evidentiary hearing. We affirm the order of the district court.

Defendant-appellant Koenig is president, chief executive officer and chairman of the board of directors of ECO, a Florida corporation the common stock

---

1. The sections of the Act which are involved in this case are Sections 10(b) and 13(a), 15 U.S.C. §§ 78j(b) and 78m(a). The Rules under which this action was brought are 10b-5, 13a-1, 13a-11 and 13a-13.

of which is held by over 8,000 stockholders. ECO's stock is listed for trading on the American and Pacific Coast Stock Exchanges.[2]

The thrust of appellants' arguments is (1) that the district court's finding of three specific instances of federal securities law violations was in error; (2) that appellants were entitled to and were denied an evidentiary hearing; and (3) that the court below abused its discretion in appointing a limited receiver with the power, *inter alia*, to supervise ECO's public disclosures, investigate and make a public report on certain "secret securities transactions" brought about by the individual defendants in this case and make preparations for and hold a shareholders' meeting at which directors would be elected.

The complex financial foundation and the bitter legal battles underlying this proceeding are described in the opinion of the district court, Current CCH Fed. Sec.L.Rep. ¶ 93,536, and we adopt its statement of the background of this case. We will refer to certain particulars only for the purpose of illuminating our decision on the points raised by the appellants.

## I. THE SECURITIES ACT VIOLATIONS

### A. *The Foreign Recapitalization Scheme*

■ The district court found that between June 1 and September 1, 1971, defendant Koenig and another named defendant, Cesare De Franceschini, an ECO director, under the guise of "recapitalizing" four of ECO's European subsidiaries, effected the transfer of voting control of those subsidiaries to an Italian partnership created and controlled by Koenig and a Liechtenstein holding company controlled by De Franceschini. ECO's board of directors were not informed of the action taken by Koenig and De Franceschini and the transaction was not disclosed in any of the various reports ECO was required to file with the Securities and Exchange Commissions.[3]

The so-called recapitalization scheme occurred at a time of great internal strife among the management and directors of ECO. The corporation was experiencing financial difficulties and appellant Koenig was under pressure to resign his posts with the corporation. The transfer of voting control of four valuable and profit-making ECO subsidiaries to Koenig and his ally was obviously a material fact that a reasonable investor (or potential investor) in ECO would have considered important in making his investment decision. See Affiliated Ute Citizens v. United States, 406 U.S. 128, 153–154, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 849 (2d Cir. 1968), cert. denied, Coates v. SEC, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). The failure to include this information in the annual report for 1971 and the quarterly reports for the year required by Section 13(a) of the Securities Exchange Act of 1934 and Rules 13a–1 and 13a–13 to be filed with the Commission, was a material omission and constituted a violation of those provisions.[4] See SEC v. Great Ameri-

2. Because of the absence of accurate financial information about ECO's stock, the SEC suspended the corporation's trading on the exchanges and on the over-the-counter market from May 25 to August 6, 1971 and from August 17, 1971 to the present.

3. Because ECO's securities are listed on the American and Pacific Coast Stock Exchanges it is required by Section 13(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(a), and Rules 13a–1, 13a–13 and 13a–11, to file annual reports with the SEC on Form 10–K, quarterly reports on Form 10–Q and current reports of material corporate developments on Form 8–K.

4. Although the third quarterly report did mention (in a footnote to the financial data) the fact that "voting control" of the subsidiaries was "exercised" by the individual defendants (in De Franceschini's case through an "ECO affiliate"), that report omitted any discussion of the complex transactions which had led up to the situation as it then stood as well as

can Industries, 407 F.2d 453 (2d Cir.), cert. denied, 395 U.S. 920, 89 S.Ct. 1770, 23 L.Ed.2d 237 (1969) ; Heit v. Weitzen, 402 F.2d 909 (2d Cir. 1968), cert. denied, 395 U.S. 903, 89 S.Ct. 1740, 23 L. Ed.2d 217 (1969).

### B. *The Teacher's Loan*

On August 3, 1971, at a time when ECO was undergoing severe financial problems, the corporation, through Koenig its president, issued a press release to the Dow Jones wire service. The release stated in part:

"On July 28, 1971, the Company renegotiated the terms of approximately $14 million in loans from the Union Bank, its prime lender. Under the renegotiated agreement, $4 million is due upon demand and the remainder is due on 4/15/72. The Company has other demand loans and overdraft privileges with various banks in the U. S. and Europe. If the $4 million loan is called by Union Bank or other demand loans are called by other banks, that event could give Union Bank the right to declare the remainder due immediately. Union Bank has

stated that it has no present intention of calling the demand loan."

What the release failed to mention was that on July 28, 1971, Teacher's Insurance and Annuity Association informed ECO that it would not provide the corporation with a $4 million loan which ECO had planned to use to repay the demand loan from Union Bank. Moreover, the press release, while also discussing ECO's European prospects, did not mention the proposed transfer of voting control among its European subsidiaries. By reason of these failures to disclose material information, the press release violated Section 10 of the Act and Rule 10b–5.[5] See SEC v. North American Research & Development Corp., 424 F.2d 63, 75 (2d Cir. 1970).

### C. *The "Southwest Nuclear" Letter to Shareholders*

On October 5, 1971, ECO sent a letter to its stockholders in which it described a contract between one of its subsidiaries and Southwest Nuclear, Inc. as "the most noteworthy single event in Ecological Science's recent history." This letter was materially false and mis-

---

any mention of the reasons for the transfer of voting control from ECO and the lack of any authorization by the board of directors for such a transfer. In its annual report for 1971 filed in May of 1972, ECO again failed to disclose how and why the transfer of control took place nor did it mention the interests which the individual defendants had in the entities which held ultimate voting control of the ECO subsidiaries.

5. Section 10(b) of the Act and Rule 10b–5 read as follows:

Regulation of the Use of Manipulative and Deceptive Devices

Section 10. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so regis-

tered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b–5. Employment of Manipuative and Deceptive Devices

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

leading. It failed to disclose, for example, that Southwest Nuclear was a Nevada corporate shell having the minimum allowable capitalization of $1,000, that Nuclear had not made the initial contract payment of $50,000 due on July 31, 1971, that George V. R. Mulligan, one of the prime backers of the nuclear plant development scheme, was also one of ECO's directors and that a Mr. Ross Bohannon, a promoter of the project, had received approximately $5,000 to help "straighten [the ECO subsidiary] out." The letter was a violation of Section 10 of the Act and Rule 10b-5. See SEC v. North American Research and Development Corp., supra; SEC v. Texas Gulf Sulphur, supra 401 F.2d at 862.

## II. EVIDENTIARY HEARING

There was sufficient undisputed evidence in the extensive record to render the holding of an evidentiary hearing unnecessary and to support the district court's findings of fact and conclusions of law. See SEC v. Frank, 388 F.2d 486, 490–491 (2d Cir. 1968).

## III. THE RELIEF GRANTED

■ The appellants continued to violate the federal securities laws even after a consent decree had been entered enjoining them from such conduct. They have persisted in their contention that their past conduct was not improper, see SEC v. MacElvain, 417 F.2d 1134, 1137 (5th Cir. 1969), cert. denied, 397 U.S. 972, 90 S.Ct. 1087, 25 L.Ed.2d 265 (1970), and they have failed to correct the inaccuracies, misstatements and omissions found in their SEC filings and press releases. It was entirely proper to issue an injunction under these circumstances.

See SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082 (2d Cir. 1972).

■ We also uphold the appointment of a receiver since the defendants have not met the heavy burden which they must bear in order to overturn the district court's exercise of its discretion. See SEC v. S & P National Corporation, 360 F.2d 741, 750–751 (2d Cir. 1966); SEC v. Manor Nursing Centers, Inc., supra 458 F.2d at 1105; SEC v. Culpepper, 270 F.2d 241, 250 (2d Cir. 1959). The powers given to the receiver were appropriate to the facts of the case. The receiver has the power to investigate and make disclosures with respect to the "recapitalization" transactions involving ECO's European subsidiaries. Those transactions were extraordinarily complex and were kept from the SEC, the investing public and ECO's stockholders by Koenig and his allies. They should be brought into the open as expeditiously as possible. The receiver was also given the power to make timely and accurate reports to the SEC and to ECO's shareholders. ECO's management has failed to file accurate reports even during the period of the present litigation. It is imperative that ECO's thousands of shareholders be informed of the corporation's affairs. The receiver was empowered to hold a meeting of ECO's shareholders and in preparation for the meeting he was to make ECO's books, records and shareholders lists available to any ECO shareholder legally entitled to receive them. This action is necessary in order to correct the failure of appellants to hold a stockholders' meeting and to allow such disclosures during the last two years.

It is clear that the public interest as well as the interest of ECO's stockholders required the appointment of a receiver. See SEC v. Charles Plohn & Co., 433 F.2d 376, 379 (2d Cir. 1970).

Affirmed.