**SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,**

v.

**CAPITAL GROWTH COMPANY, S.A.
(COSTA RICA), et al.,
Defendants.**

**No. 74 Civ. 3779.**

United States District Court,
S. D. New York.

Dec. 31, 1974.

Richard L. Jaeger, Chief Counsel, Division of Enforcement, Washington, D. C., for SEC.

Irving Rader, New York City, for defendant EHG Enterprises.

## MEMORANDUM

STEWART, District Judge:

This action was brought on by order to show cause on September 3, 1974 by the Securities and Exchange Commission ("SEC") for injunctive relief and for the appointment of a receiver. The complaint alleges violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. Specifically, the complaint alleges that from September 1968 up to the present all of the defendants at various times have engaged in a course of conduct designed to convert the assets of the Capital Growth companies for their own benefit to the detriment of their shareholders.

On September 3, 1974, this court entered a temporary restraining order ("TRO") which enjoined defendants from taking any action with regard to the present and future assets of Capital Growth Company, S.A. (Costa Rica) and Capital Growth Company, S.A. (Panama) and the voting securities of Capital Growth Company, S.A. (Costa Rica) and New Providence Securities, Ltd., S.A. The TRO further enjoined defendants from engaging in any acts in violation of Section 10(b) or Rule 10b–5.

Since the defendants may be classified in three similarly situated groups, each group will be discussed separately.[1]

### 1. The Sheffield Group

Defendant Sheffield Advisory Company, S.A. is a Panamanian company with offices in New York City. It is the successor to defendant Sheffield Advisory Company, formerly a New York limited partnership with offices in New York City. Sheffield[2] served as investment advisor to defendant New Providence Securities, S.A. ("New Providence"), investment manager for the Capital Growth companies, with respect to the investment and reinvestment of the assets of the Capital Growth companies.

Defendant Sanford C. Shultes ("Shultes") is a United States citizen and a resident of New York City. Shultes managed and directed the affairs and was a substantial owner of Sheffield during the period covered by the complaint. From on or about October 15, 1971, to on or about July 25, 1972, Shultes was a director of New Providence and the Capital Growth companies.

The Sheffield group appeared in this action and requested an extension of time before the hearing on a preliminary injunction. Such an extension was given and during that time those defendants agreed with the SEC to settle the case against them. A permanent injunction was entered against Sheffield Advisory Company and Shultes on October 30, 1974. Following approval by its Board, defendant Sheffield Advisory

1. For purposes of convenience only we divide the defendants into three groups as follows:
  1. The Sheffield Group: defendants Sheffield Avisory Company, its successor, Sheffield Advisory Company, S. A. and Sanford C. Shultes.
  2. The Capital Growth Group: defendants Capital Growth Company, S. A. (Panama), Capital Growth Company, S. A. (Costa Rica), New Providence Securities, S. A. and Clovis W. McAlpin.
  3. The EHG Group: defendants EHG Enterprises, Inc., Ariel E. Gutierrez and Enrique H. Gutierrez.

2. Reference to "Sheffield" in this opinion is to Sheffield Advisory Company, S. A. and its predecessor Sheffield Advisory Company.

Company, S.A. entered into a settlement agreement with the SEC on December 16, 1974.

## 2. *The Capital Growth Group*

Capital Growth Company, S.A. (Panama) ("CG Panama") is a wholly-owned subsidiary of the Costa Rica corporation Capital Growth Company, S.A. (Costa Rica) ("CG Costa Rica"). CG Panama was incorporated on August 4, 1972 and acquired substantially all the investments of CG Costa Rica on that date. The preferred shares of CG Costa Rica are held by approximately 16,000 public investors. On July 10, 1971, Capital Growth Fund, S.A. was converted into a close-ended investment company and changed its name on September 24, 1971 to Capital Growth Company, S.A. (Costa Rica).

Defendant New Providence and its predecessors have served as investment managers for the Capital Growth companies and own all of their common stock.

Defendant McAlpin owns or controls approximately sixty percent of the outstanding voting securities of New Providence. McAlpin, a resident of Costa Rica, has served as president and chairman of the boards of directors of the Capital Growth companies and of defendant New Providence.

The Capital Growth group defendants did not appear in this case and a preliminary injunction was entered against them on September 24, 1974.[3] At the same time, this court appointed a receiver *inter alia*, to take possession and control of certain assets of the Capital Growth companies wrongfully received by other of the named defendants and to seek disgorgement and an accounting from those defendants of all misappropriated assets of the Capital Growth companies. After the preliminary injunction was entered, this court received a request on behalf of CG Costa Rica to contest the preliminary injunction. A hearing was scheduled and held on Sep-

tember 24, 1974. The sole objection raised at that hearing and in subsequent papers filed with this court is one of subject matter jurisdiction. Defendant claims that under the laws of Costa Rica no foreign agency can have authority or competency over Costa Rican companies and no receiver may be appointed. Even assuming the validity of these arguments, they are addressed not to the SEC's allegations that American securities laws have been violated, but only to whether this court's orders can be implemented in a foreign jurisdiction, a question not presently before us.

The issue presented by this challenge is whether this court had jurisdiction over the fraudulent scheme alleged in the complaint so that the injunction could be entered and the receiver appointed. We find that there was jurisdiction. First we note that since the Costa Rican defendants have not answered the complaint nor challenged the entry of a preliminary injunction on grounds other than jurisdiction, our inquiry is limited. We can take the allegations of the complaint as well as the affidavits in support of the preliminary injunction as true with respect to the Capital Growth defendants and do not need to set forth all the uncontested factual matters. *See* Carpenters' District Counsel v. Cicci, 261 F.2d 5 (6th Cir. 1958); *cf.* SEC v. Koenig, 469 F.2d 198, 202 (2d Cir. 1972); SEC v. Frank, 388 F.2d 486 (2d Cir. 1968).

Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa) gives United States district courts subject matter jurisdiction over suits brought to enforce any liability or duty created by the Act or rules and regulations promulgated thereunder. If the Securities Exchange Act is applicable, therefore, this court has jurisdiction.

The leading cases in this circuit make it clear that subject matter jurisdiction will attach to the transactions here in issue if it can be established either that

---

3. The signing of the injunction was delayed while a receiver was found who could be included in the injunctive order.

there was significant conduct within the territorial limits of the United States or that there was extraterritorial conduct which was harmful to and which had an impact upon United States investors. *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326 (2d Cir. 1972); *Schoenbaum v. Firstbrook,* 405 F.2d 200 (2d Cir. 1968) rev'd in part on other grounds, 405 F.2d 215 (2d Cir. en banc, 1968), cert. denied sub nom. *Manley v. Schoenbaum,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969). *See also Travis v. Anthes Imperial Limited,* 473 F.2d 515 (8th Cir. 1973). The *Leasco* court found that the issue of subject matter jurisdiction turns on a factual determination of whether acts which formed an essential part of the fraudulent activities occurred within the United States. The additional fact that the conduct complained of had an impact upon a United States company, its shareholders, or upon United States investors tips the scales in favor of applying the United States securities laws. The facts before this Court bring the present action well within the guidelines set forth in *Leasco.*

The SEC has submitted affidavits of a number of United States shareholders of the Capital Growth companies who state that they purchased their shares through the United States mails and, in one instance, after a sales pitch regarding Capital Growth's "status and ambitions" by defendant McAlpin at a group meeting in New York.[4] In addition, the Capital Growth companies are alleged to have sent both stock certificates and sporadic literature regarding the companies through the United States mails to United States investors. As the *Leasco* court noted: "We see no reason why, for purposes of jurisdiction to impose a rule, making telephone calls and sending mail to the United States should not be deemed to constitute conduct within it." *Leasco v. Kerman, supra* 468 F.2d at 1335.

■ The SEC alleges that the above securities were offered and sold to public investors under representations which stressed the companies' ties with the United States and the advantages of its securities markets. For example, the prospectuses stated: "Capital Growth Fund is one of the few mutual funds operating outside of the United States whose underlying investments are primarily in United States securities, whose management company has a Board of Directors primarily composed of executives within the United States . . . . The Fund's assets are invested with the assistance of investment advisors who are registered with the Securities [and] Exchange Commission of the United States." Thus, the companies' own statements lead us to conclude that there is sufficient contact here with the United States to assert jurisdiction. *See* SEC v. C. M. Joiner Leasing Corp., 320 U.S. 344, 353, 64 S.Ct. 120, 124, 88 L.Ed. 88 (1943) ("promoters' offerings [should] be judged as being what they are represented to be.")

The illiquid investments, non arms-length transactions and other activities alleged in the complaint with which the Capita Growth companies were involved were contrary to the representations and restrictions contained in the above prospectuses of the companies. In addition, while prospective purchasers were told in the prospectuses that "the Sponsor [a subsidiary of the Management Company] will liquidate the shares in the planholder's account at 100% of the net asset value at the time instructions are received", the companies were close-ended without prior notice to or approval of the shareholders, thereby extinguishing the shareholders' right to redeem.

■ We find from these and other allegations made by the SEC that sufficient acts occurred within the United States which formed an essential part of the fraudulent activities alleged to as-

4. We do not find that jurisdiction in any way hinges on the number of United States

investors. SEC v. United Fin'l Group Inc., 474 F.2d 354, 356 (9th Cir. 1973).

sert jurisdiction. Clearly, these alleged acts, taken as true, had an impact upon United States investors. Also, the uncontested factual allegations by the SEC of acts in the Southern District make venue proper here.

■■ Having found subject matter jurisdiction, we turn now to the merits of issuing the injunction and appointing a receiver. The Second Circuit has recently found the applicable standard for issuing a preliminary injunction to be "a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Sonesta International Hotels Corporation v. Wellington Associates, 483 F.2d 247 (2d Cir. 1973). *But see,* Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (requiring irreparable harm for all preliminary injunctions). We find both these standards to be met here. The SEC has alleged enough to show a violation of Rule 10b–5. These allegations, uncontested by the Capital Growth group defendants and therefore taken as true, clearly indicate success on the merits. In addition, a reasonable likelihood of future violations and thus a likelihood of irreparable harm to the shareholders of the Capital Growth companies may be inferred from these past violations even if defendants have ceased their prior illegal activities. SEC v. Keller Corp., 323 F.2d 397 (7th Cir. 1963); SEC v. Culpepper, 270 F.2d 241, 245 (2d Cir. 1959). In addition, it is clear that since the American securities laws are applicable here, this court may exercise its general equity powers to appoint a receiver and to seek disgorgement of mis-

appropriated funds. Mitchell v. De-Mario Jewelry, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960) citing Porter v. Warner Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946); SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082 (2d Cir. 1972) and cases cited therein at 1105; SEC v. Keller Corp., 323 F.2d 397 (7th Cir. 1963); SEC v. Bowler, 427 F.2d 190 (4th Cir. 1970); SEC v. Koenig, 469 F.2d 198 (2d Cir. 1972). We chose to do so in this case in view of the strong SEC showing of fraudulent misappropriation of monies by fiduciaries entrusted with the management of corporate assets.

### 3. *The EHG Group*

Defendant EHG Enterprises, Inc. ("EHG") was incorporated and has its principal place of business in the Commonwealth of Puerto Rico. EHG is primarily engaged in real estate management, development and construction in Puerto Rico and, formerly, in the State of Florida. Defendants Enrique E. Gutierrez and Ariel E. Gutierrez, both naturalized United States citizens and residents of Puerto Rico, are chairman of the board of directors and president of EHG, respectively, and between them own in excess of ninety-eight percent of its common stock.

Since the EHG group defendants neither appeared nor answered the complaint, a preliminary injunction was entered against them and a receiver appointed on September 24, 1974. Thereafter, on October 11, 1974, the EHG group moved for a "special appearance"[5] to quash service of process, to vacate the preliminary injunction and the appointment of a receiver, to set aside the default, and to request additional time within which to answer the complaint.[6]

---

5. There is no longer any need to file a "special appearance" to contest personal jurisdiction under Rule 12 of the Federal Rules of Civil Procedure. *See* 2A Moore Federal Practice ¶12.02–.03 (2d ed. 1974).

6. At oral argument on November 25, 1974, the EHG group defendants said that they

were willing to answer the complaint the following day. The court directed that they do so and they did. It is unnecessary, therefore, to reconsider the request to vacate the "default" by these defendants' failure to answer the complaint.

We have granted defendants' motion to reconsider the entry of the preliminary injunction and appointment of a receiver against them. Upon consideration of the arguments made before this court on November 25, 1974 and the papers submitted in connection with this motion, we adhere to our original decision.[7] The questions of subject matter jurisdiction and venue raised on this motion have been fully considered above (in what constitutes our findings and conclusions as required by Rule 52 of the Federal Rules of Civil Procedure).[8]

There is one contention raised by the EHG group defendants, however, which this court has not previously considered. The crux of this contention is that these defendants were given inadequate notice of the proceedings to comport with due process. As a remedy, defendants seek to quash service of process and to vacate the preliminary injunction and appointment of a receiver. In order to dispose of the EHG defendants' contention, we must review the factual sequence leading up to the court's order.

The complaint in this case was filed by the SEC at 9:00 a. m. on September 3, 1974 and was accompanied by an order to show cause to bring on a hearing for a temporary restraining order ("TRO"). The hearing on the TRO was set for 4:30 p. m. on the same day. The affidavit of the SEC in connection with defendants' motion herein states that two telephone calls were placed during that day to Laurence Greenwald, Esq. of Stroock & Stroock & Lavan ("Stroock") which firm had represented the EHG group defendants in other SEC related matters. On both occasions, at approximately 10:30 a. m. and 4:25 p. m., Greenwald apparently stated that his firm "had not yet been retained." At 11:30 a. m., in between the two telephone calls, copies of the order to show cause and proposed TRO, the memorandum in support thereof and the complaint were hand-delivered to Greenwald at the offices of Stroock. The TRO was entered at 5:30 p. m. on September 3, 1974 with the provision that defendants would have an opportunity to vacate the order at 12:45 p. m. the following day. At 7:00 p. m., the SEC contacted Ariel Gutierrez in Puerto Rico and explained that the TRO had been entered, what it entailed, and that the defendants would be afforded an opportunity the following day to vacate the order. Ariel Gutierrez apparently stated that he would convey the information to his brother, Enrique Gutierrez (Wiener affidavit, p. 3).

On September 4, 1974 copies of the order to show cause and the TRO were sent by certified mail to the offices of the EHG group in San Juan, Puerto Rico. Copies of the orders were also delivered by hand to Greenwald at Stroock. A hearing for the preliminary injunction was set down for September 13, 1974. On September 5, 1974, the SEC

---

7. While defendants have now answered the complaint and submitted both an affidavit of Ariel E. Gutierrez and a number of exhibits in connection with their motion, their argument against the preliminary injunction in their motion papers does not challenge the SEC's factual allegations. The Gutierrez affidavit which disputes some of the SEC's factual allegations does not dispute the major transactions but rather goes to the issue of Gutierrez' good faith dealing. Even if accepted, however, defendants' claim of good faith does not bar liability when the effect of such transactions is to defraud public investors. SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1096–97 (2d Cir. 1972). In addition, while this court stated during oral argument that it would consider any further evidence which defendants wanted to offer on the question of whether the injunction should have been issued upon the facts of this case, no such evidence was submitted.

8. The analysis regarding the Capital Growth group defendants applies to the EHG group defendants insofar as it establishes subject matter jurisdiction over the entire fraud alleged in the complaint. It is, of course, an easier matter to deal with the EHG group in terms of execution of the injunction since Puerto Rico is an American territory and as such is subject to the United States securities laws. Section 27, Securities Exchange Act of 1934 (15 U.S.C. § 78aa). For example, the EHG defendants have not argued, nor could they do so, that a receiver cannot be appointed to seek disgorgement and an accounting of misappropriated assets.

again contacted Ariel Gutierrez by telephone and informed him of the date of the preliminary hearing. Ariel Gutierrez apparently again stated that he would communicate the information to his brother, Enrique Gutierrez (Wiener affidvit, p. 4). A letter dated September 6, 1974 was sent to both Ariel and Enrique Gutierrez imparting the same information as the telephone call. On September 10, the SEC again called Ariel Gutierrez to enquire whether he planned to attend the hearing. He apparently stated that he had not yet retained counsel and did not know what course of action he would pursue (Wiener affidavit, p. 4). Additionally, he stated that he doubted whether he or his brother would attend the scheduled hearing. On September 25, 1974, conformed copies of the preliminary injunction and order appointing a receiver were mailed to the EHG group defendants in San Juan, Puerto Rico.

Considering this background fully, we find that defendants were given adequate notice to meet the requirements of Rule 65(a)(1) of the Federal Rules of Civil Procedure and due process of law. Rule 65(a)(1) requires that a preliminary injunction be issued only upon notice to the adverse party. The rule does not specify the kind of notice to be given. The sufficiency of notice is for the trial court's determination under the circumstances of each particular case. 7 Moore Federal Practice ¶ 65.04 [3] (2d ed. 1974); Plaquemines Parish School Board v. United States, 415 F.2d 817 (5th Cir. 1969). The constitutional standard required for due process is set forth by the Supreme Court in Mullane v. Central Hanover Bank & Trust Company, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . The notice must be of such a nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance . . . . But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisifed. (citations omitted).

We find here that under the circumstances of the present case, the EHG group defendants received sufficient notice of the proceedings against them and an adequate opportunity to present their objections. The first argument which defendants make is a technical one: that the notice which they received was invalid because they had not received the summons and complaint, and hence, were not parties at the time the notice of the preliminary injunction proceedings was received. We find this contention to be without merit. SEC v. Dumont, 49 F.R.D. 342 (S.D.N.Y.1969). Notice was effectively given even though technically these defendants were not yet properly served with the summons and complaint. We disagree with the SEC's contention upon oral argument, however, that it is unnecessary to have personal jurisdiction over the defendants for entry of a preliminary injunction. If this Court lacked personal jurisdiction over these defendants, then the injunction would be void as to them. SEC v. Dumont, 49 F.R.D. 342 (S.D.N. Y.1969); 7 Moore Federal Practice ¶ 60.25[2] (2d ed. 1974). We find, however, that there was personal jurisdiction over the parties at the time the injunction was entered five days after service of the summons and complaint.

Defendants next contend that the notice itself was insufficient. Notice can be insufficient because it does not sufficiently apprise a defendant of a scheduled hearing or of the facts involved in the claim against him. On the other hand, notice can be inadequate because it provides insufficient time to prepare a defense. Neither of these contentions is applicable here.

The SEC contends that the case of Plaquemines Parish School Board v. United States, 415 F.2d 817 (5th Cir. 1969) is relevant here. We agree. In *Plaquemines*, complaining defendant had been joined as an additional party in the action and alleged it had no notice of the government's intention to proceed on a motion for a preliminary injunction. The Fifth Circuit held that a temporary restraining order and a show cause order which had been served personally with an amended complaint upon defendant and its individual members constituted sufficient notice. "These papers fully advised the Commission Council and its members of the nature of the claim against them and of the plaintiff's application for a preliminary injunction." 415 F.2d at 824. Thus the court found that the order to show cause gave defendants sufficient notice of the preliminary injunction hearing. In *Plaquemines*, defendants received the summons and complaint together with the TRO and show cause order, while in the instant case defendants were not served with the summons and complaint until September 19, 1974, some fifteen days after the TRO papers and four days before entry of the preliminary injunction. Nevertheless, we find that the papers served upon defendants sufficiently apprised them of the facts involved in this case and therefore gave them adequate notice in that respect.

Further, enough time was afforded to prepare for the hearing. Ariel Gutierrez was notified by telephone on September 3, 1974. While we would not find this communication alone to be sufficient notice, copies of the TRO and order to show cause were sent to both Ariel and Enrique Gutierrez on September 4, 1974. This provided defendants with sufficient notice of the hearing and afforded them an opportunity to appear and to be heard. Rule 6(d) of the Federal Rules of Civil Procedure provides that motions on notice should give such notice not later than five days before the time specified for the hearing. Rule 6(e) further provides that if such notice is sent by mail, three additional days should be allowed. We find that defendants here had at least the required eight days notice.[9]

 If there were any doubt about the adequacy of notice, this hearing on defendants' application to set aside the preliminary injunction and appointment of a receiver has effectively vitiated any inadequacies in the notice afforded for the previous hearing, since defendants have now had an opportunity to present any argument they may have had against its entry. *See* Banke v. Novadel-Agene Corp., 130 F.2d 99 (2d Cir. 1942), cert. denied 317 U.S. 692, 63 S.Ct. 324, 87 L.Ed. 554 (1942). *Cf.* American Surety Co. v. Baldwin, 287 U.S. 156, 168, 53 S.Ct. 98, 77 L.Ed. 231 (1932).

For all the above reasons, the injunction issued by this court on September 24, 1974 is binding on the EHG group defendants and on all the defendants named therein.

So ordered.

---

9. Since Ariel Gutierrez is chairman of the board and Enrique Gutierrez is president of EHG, the corporate defendant received notice and was properly served. Rule 4(d)(3) of the Federal Rules of Civil Procedure.