**SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,**

v.

**BEISINGER INDUSTRIES CORP. et al., Defendants-Appellants.**

No. 76–1470.

United States Court of Appeals, First Circuit.

Argued Jan. 6, 1977.

Decided March 31, 1977.

Ronald F. Kehoe, Boston, Mass., with whom Frank J. Teague and Haussermann, Davison & Shattuck, of Boston, Mass., were on brief, for defendants-appellants.

Jacob H. Stillman, Asst. Gen. Counsel, Washington, D. C., with whom David Ferber, Sol. to the Commission, Washington D. C., was on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, BOWNES,* District Judge.

* Of the District of New Hampshire, sitting by designation.

BOWNES, District Judge.

This is an appeal from an order appointing a special agent to supervise Beisinger Industries Corporation's (BIC) filings with the Securities and Exchange Commission (SEC).

The special agent was instructed to: (1) retain and supervise an independent firm of certified public accountants to perform a special audit in order to obtain financial statements of the registrant for the years 1973, 1974 and 1975 which comply with all applicable SEC rules and regulations; (2) supervise and secure the dissemination to the public, and the filing of all SEC reports which BIC is required to file; (3) supervise the defendants' compliance with an October 7, 1975, preliminary injunction, consented to by the defendants, BIC, Court J. Beisinger and Jeanette H. Beisinger (Beisingers), which enjoined them from further violations of the antifraud and reporting provisions of the Securities Act of 1933 (Securities Act) and the Securities Exchange Act of 1934 (Exchange Act). The court also ordered the defendants to cooperate with the special agent.

There are two issues on appeal:

1. Did the district court abuse its discretion in appointing a special agent to bring the defendants into compliance with the reporting requirements of the Exchange Act?

2. Did the district court have personal jurisdiction over the defendants, Beisinger Industries of Canada, Inc. (Canada), and the Beisingers?

## PROCEDURAL HISTORY

The action was commenced in the District Court for the District of Columbia on July 23, 1975, by the SEC which alleged that the defendants had violated antifraud and reporting provisions of the Securities Act and the Exchange Act. The district court issued the October 7, 1975, preliminary injunction with the consent of BIC and the Beisingers. After finding that proper service had been made on Canada and BIC

International Establishment (Establishment), the district court issued default judgments against them on October 23, 1975. At the same time, the court transferred the case to the District Court for the District of Massachusetts stating:

> The Court is of the view, based on the material presently before it, that some form of immediate additional relief to assure adequate supervision of defendants may be desirable to supplement the existing preliminary injunction, but the decision to appoint a special advisor or fashion other supplementary relief should rest with the transferee court.

After repeated failures by the defendants to file the required forms with the SEC, the district court made the order appointing an agent.

## THE FACTS

We now review the facts which led to that order to see whether there was an abuse of discretion.

BIC, a Delaware corporation with its principal place of business in Taunton, Massachusetts, is a rubber goods manufacturer employing approximately seventy employees with annuals sales of approximately $3,000,000. The company resulted from a merger between Lucerne Rubber Company, which had been wholly owned by the Beisingers, and Resitron Laboratories, Ltd. BIC has 900 plus public stockholders who own something less than 10% of BIC. Canada owns 91.5% of the outstanding stock of BIC; Establishment owns 100% of the outstanding stock of Canada, and the Beisingers own 100% of the outstanding stock of Establishment. Therefore, the Beisingers control 91.5% of the outstanding stock of BIC. The Beisingers are also directors and officers of BIC: Court Beisinger is President, and Jeanette Beisinger is Secretary and Treasurer.

In early 1973, BIC transferred $1,059,237 to its subsidiary, Beisinger International Company (International) for the purchase of 55% of a West German corporation, Wandplatten Fabric Engers Gmbh. The sale was completed for $912,000.

On December 20, 1973, BIC sold all of the outstanding stock of International for $9,500 to defendant Canada, which, as previously noted, is wholly owned by the Beisingers. There is no evidence that there is any agreement for repayment to BIC of the $1,059,237 or any part of it.

Rules promulgated pursuant to the Exchange Act required BIC to file a report, Form 8-K, with the SEC by January 10, 1974, describing BIC's sale of International. Rule 13a–11, 17 C.F.R. § 240.13a–11. This report was never filed. BIC was also required to file an annual Form 10-K for the year 1973 on March 31, 1974, but this was not filed until November 11, 1974. This filing was the first one which contained any reference to the transfer of assets by BIC or to the sale of the stock of International. Indeed, it was from this filing that the SEC first learned of those transactions.

Included as an asset in the annual Form 10-K financial report was the amount of $1,059,237 for "advances to Beisinger International Corporation, S. A. Luxemburg (formerly a wholly-owned subsidiary) (Note 2)." Note 2 to BIC's financial statement says with reference to this transfer, "This advance, which does not bear interest, was unrepaid at December 31, 1973, and no terms of repayment had been agreed." BIC's auditors, in their opinion accompanying the financial statements, said:[1]

> In accordance with the instructions of the management of the Company, the scope of our examination did not include any auditing procedures with respect to the advances to Beisinger International Corporation, S. A. Luxemburg, which at December 31, 1973 amounted to $1,059,-237.
>
> Because this advance enters materially into the determination of the financial position, results of operations and

---

1. The SEC asserts that the same balance sheet entry for the $1,059,237 advance, and the same statements in the auditor's opinion as are quoted here also appear in the Form 10-K for 1974. Our record does not include that form.

changes in financial position, and because of the uncertainty of the possible material income tax adjustments . . . , we do not express an opinion on the aforementioned financial statements of Beisinger Industries Corp. and subsidiaries and of Beisinger Industries Corp. at December 31, 1973 and for the year then ended.

During January of 1975, after International had been sold to Canada, BIC advanced $400,000 to International to enable it to purchase another West German company called Turnwald Gmbh. Like the previous advance, this one was made without any provision for interest or repayment.

BIC's annual report on Form 10-K for 1975 includes as an asset the amount of $1,459,237, as advances to International. The auditor's opinion which accompanies the statement notes the refusal of the Beisingers to permit a complete audit with respect to the funds advanced to International:[2]

> In accordance with management's instructions, the scope of our examination did not include auditing procedures with respect to the advances to Beisinger International Corporation, S. A. Luxemburg, which at December 31, 1975 aggregated $1,459,237. The treatment of such advances materially affects the financial position, results of operations, changes in financial position and schedules of the Company at December 31, 1975 and for the year then ended.

> \* \* \* \* \* \*

> Because of the limited scope of our examination and the significant uncertainties referred to herein, we are unable to and do not express an opinion on the accompanying financial statements and schedules of Beisinger Industries Corp. and

subsidiaries as at and for the year ended December 31, 1975.

In determining to appoint a special agent, the district court relied on the foregoing facts and on BIC's repeated tardiness in filing the various reports required by the SEC. Memorandum in Connection with Order Appointing Special Agent.

■ The reporting requirements of the Securities Exchange Act of 1934 is the primary tool which Congress has fashioned for the protection of investors from negligent, careless, and deliberate misrepresentations in the sale of stock and securities. Congress has extended the reporting requirements even to companies which are "relatively unknown and insubstantial." S.Rep.No. 379, 88th Cong. *See also A. C. Frost & Co. v. Coeur D'Alene Mines Corp.*, 312 U.S. 38, 61 S.Ct. 414, 85 L.Ed. 500 (1941); *Securities and Exchange Commission v. Ralston Purina Co.*, 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953); *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168, (1953); *Gilligan, Will & Co. v. Securities and Exchange Commission*, 267 F.2d 461 (2d Cir. 1959), *cert. den.*, 361 U.S. 896, 80 S.Ct. 200, 4 L.Ed.2d 152 (1959). The SEC has discretion, where the reporting requirements are not met, to suspend or revoke the registration of the noncomplying company, which prevents any further trading of the securities. 15 U.S.C. § 78*l*(j).

■ The standard for review of the district court's order appointing a special agent is whether the district court abused its discretion. *Bookout v. First National Mortgage and Discount Co., Inc.*, 514 F.2d 757 (5th Cir. 1975); *Securities and Exchange Commission v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082 (2d Cir. 1972). It is well established that Section 22(a) of the Securities Act of 1933 (15 U.S.C. § 77v(a)) and Section 27 of the Securities Exchange Act

---

**2.** The refusal on the part of BIC's management, the Beisingers, was probably in direct contravention of the district court's order of October 7, 1975, which "preliminarily restrained and enjoined" the defendants:

> from filing annual, periodic and other required reports with the Commission which contain untrue statements of material facts

> or which omit to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading or which omit information required by the Commission to be stated therein . . . . .

It is to be kept in mind that the defendants consented to this injunction.

of 1934 (15 U.S.C. § 78aa) confer general equity powers on the district courts. *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940); *Manor Nursing, supra*, 458 F.2d at 1103; *cf. Herpich v. Wallace*, 430 F.2d 792 (5th Cir. 1970). Included in these equitable powers is the power to appoint a receiver. *Securities and Exchange Commission v. First Securities Co. of Chicago*, 528 F.2d 449 (7th Cir. 1976); *Securities and Exchange Commission v. Capital Counsellors, Inc.*, 512 F.2d 654 (2d Cir. 1975); *Securities and Exchange Commission v. Shapiro*, 494 F.2d 1301 (2d Cir. 1974); *Securities and Exchange Commission v. First Am. Bank & Trust Co.*, 481 F.2d 673 (8th Cir. 1973); *Securities and Exchange Commission v. Koenig*, 469 F.2d 198 (2d Cir. 1972); *Securities and Exchange Commission v. Naftalin*, 460 F.2d 471 (8th Cir. 1972); *Manor Nursing, supra*, 458 F.2d at 1105; *Securities and Exchange Commission v. Fifth Ave. Coach Lines, Inc.*, 435 F.2d 510 (2d Cir. 1970). *See* Farrand, *Ancillary Remedies in SEC Civil Enforcement Actions*, 89 Harv.L.Rev. 1779 (1976). In *Koenig, supra*, 469 F.2d at 202, the Second Circuit Court of Appeals upheld the appointment of a receiver where the defendants continued to violate federal securities laws after a consent decree had been entered enjoining them from such conduct. This is precisely the case here.

The district court judge's memorandum and opinion setting forth his reasons for appointing an agent states the law correctly and is a proper exercise of judicial discretion. Where a district court has "restrained and enjoined [a company] from filing . . . required reports with the [Securities and Exchange] Commission which . . . omit information required by the Commission to be stated therein, and from failing to file said reports on a timely and current basis; . . . " and the defendants have still not complied with the filing requirements of the SEC, it is not an abuse of discretion for the district court to appoint a receiver, regardless of the title, with the limited powers extended here.

## PERSONAL JURISDICTION

Under both the Securities Act of 1933 and the Securities Exchange Act of 1934, a defendant may be served wherever he is found. 15 U.S.C. §§ 77v and 78aa. Defendants who are residents of foreign countries must be served in accordance with Rule 4(i) of the Federal Rules of Civil Procedure. Counsel for the SEC stated to Judge Gesell at the October 22, 1975, hearing:

> In compliance with the Court's order allowing service to be made by registered mail, we sent service by registered mail to both of those entities.

Canada and the Beisingers contend that they were not served properly. They point out that there is no return receipt on record.

The SEC claims that defendants stipulated that they were served:

> Defendants hereby acknowledge service of the Summons, Complaint, and Plaintiff's Motion for a Preliminary Injunction and Appointment of a Special Master, said effective date for all purposes to be September 8, 1975.

The defendants claim that this was modified by a later paragraph in the same stipulation:

> This stipulation shall not be deemed a waiver of any defense, including that of jurisdiction over subject matter and/or person of any of the named defendants.

Pursuant to Rules 12(b) and 12(h) of the Federal Rules of Civil Procedure, if the defense of improper service is not raised as a preliminary matter, either by motion or as part of an answer, it is waived.

The defendants contend that they raised this issue properly on November 24, 1975, in a motion entitled "Motion to Dismiss Presenting Defenses Under Rule 12(b)." It says in pertinent part:

> To dismiss the action as to these defendants or in lieu thereof to quash the returns of service, on the ground that said defendants are not citizens or residents of the United States; were not and are not doing business within the United

States; and were not and are not subject to the service of process within the District of Columbia, or within the District of Massachusetts, or by extraterritorial service.

 The defense which was actually raised was not that service had not been properly made according to Rule 4(i), but that such service was impossible because the parties were outside the jurisdiction of the court. Therefore, the defense of insufficient service was waived.

 The purpose of service of process is to give a party notice of the proceedings in sufficient time to prepare an adequate defense. None of the defendants here can claim, in good faith, that they did not know of the action against them or that they were deprived of an opportunity to be heard on the issues.

*The order of the district court is affirmed.*