**SECURITIES AND EXCHANGE COMMISSION, Plaintiff–Appellee,**

v.

**INTERNATIONAL SWISS INVESTMENTS CORPORATION; the Leverage Fund; the Sulfur Fund; Leonard C. Zrnic; Jana Whyman, Defendants–Appellants.**

**SECURITIES AND EXCHANGE COMMISSION, Plaintiff–Appellee,**

v.

**INTERNATIONAL SWISS INVESTMENTS CORPORATION; the Leverage Fund; the Sulfur Fund; Leonard C.**

---

Zrnic; Jana L. Whyman, aka Jana Zrnic; Alexander Montegue; Alexander Barker; David Watson, Defendants–Appellants.

Nos. 88–3941, 88–4255.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1989.

Decided Feb. 12, 1990.

Brian T. Rekofke, Witherspoon, Kelley, Davenport & Toole, Spokane, Wash., for defendants-appellants.

Thomas L. Riesenberg, Asst. General Counsel, S.E.C., Washington, D.C., for plaintiff-appellee.

Before NORRIS, THOMPSON and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We are asked to determine the validity of service of process abroad by the Securities and Exchange Commission ("SEC") in this securities fraud action.

I

Appellants—International Swiss Investments Corp. ("International Swiss"), the Leverage Fund, the Sulfur Fund, Leonard Zrnic ("Zrnic"), and Jana Whyman ("Whyman")—all reside in Mexico and other foreign countries or have their principal place of business outside the United States. On April 15, 1988, the district court granted the SEC's motion for a temporary restraining order, enjoining appellants from selling unregistered securities in the United States, freezing certain assets and ordering an accounting. On the same day, the district court authorized the SEC's attorneys to serve process on appellants.

On April 19, 1988, counsel for the SEC personally served Zrnic and Whyman in Cancun, Mexico with a complaint, summons, temporary restraining order, and order for an accounting. On April 25, 1988, the district court held a hearing at which appellants' counsel appeared for the limited purpose of contesting personal jurisdiction. At this hearing, the court granted both the SEC's motion for a preliminary injunction and "leave to the defendants to come in as soon as they want[ed] and raise [motions] concerning jurisdiction."

On June 17, 1988, the district court denied appellants' motion to vacate the preliminary injunction. Appellants filed their notice of appeal from this order on June 24, 1988.

Between April 15 and September 15, appellants and their agents continued to sell unregistered securities to persons in the United States in violation of the prelimi-

nary injunction. Appellants also failed to file the required accounting.

The SEC moved on July 28, 1988 for an order of civil contempt against all appellants and three of their agents. Notice of the show cause hearing was served on appellants or their agents at their last known addresses by an express service and by registered mail to Panama City, Panama and Cancun, Mexico. The notice stated that failure to appear would be grounds for issuance of a bench warrant. The show cause hearing on the motion for civil contempt was held on September 9, 1988; neither appellants nor their agents appeared either in person or by counsel.

After the hearing, the district court on September 15 made findings of fact based on evidence provided by the SEC, granted the SEC's motion for judgment of civil contempt, issued bench warrants for the arrest of Zrnic and Whyman and their agents, and ordered that fines be levied against appellants. On October 13, 1989, appellants filed a notice of appeal from the order of the district court granting the SEC's motion for civil contempt.

Appellants thus appeal both from the district court's June 17 denial of their motion to vacate the injunction and from the court's September 15 civil contempt order. Both appeals were consolidated for argument. Appellants do not challenge the merits of the SEC's motions for an injunction and a contempt order. Nor do they challenge the district court's findings of fact. They do, however, challenge the jurisdiction of the district court to enter the two orders described above.

II

Appellants assert that the district court does not have personal jurisdiction over them because the SEC used an ineffective method of service of process. They claim that personal service was improper because the Inter–American Convention on Letters Rogatory, *opened for signature* Jan. 30, 1975, —— U.S.T. ——, T.I.A.S. No. ——, VIII *Martindale–Hubbell Law Directory*, Part 7, 39–42 (1989) (the "Inter–American Con-

vention"), and international law required a different method. We disagree.

## A

The Federal Rules of Civil Procedure prescribe the legally effective methods of serving process in foreign countries. Under Rule 4, "[w]henever a statute of the United States ... provides for service of a summons ... upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in the manner stated in this rule." Fed.R.Civ.P. 4(e).

In a securities fraud case such as this, 15 U.S.C. § 78aa provides statutory authority for service on a defendant "wherever [he] may be found." This includes " 'service on a defendant who can be "found" only in a foreign country.' " *SIPC v. Vigman*, 764 F.2d 1309, 1316 (9th Cir.1985) (quoting *Travis v. Anthes Imperial Ltd.*, 473 F.2d 515 (8th Cir.1973) (citation omitted)). Because section 78aa does not prescribe the manner of service, however, one must look to the Federal Rules of Civil Procedure for guidance. Rule 4(i) provides such guidance; it allows for a number of alternative methods for service of process in foreign countries.

■ The SEC satisfied the requirements of Fed.R.Civ.P. 4(i) in two ways. First, the SEC personally served the summons and complaint on the appellants in Mexico in fulfillment of Rule 4(i)(1)(C). Second, "out of an abundance of caution," to use its language, the SEC satisfied another effective method of service when it personally served the summons and complaint "as directed by order of the [district] court." *See* Fed.R.Civ.P. 4(i)(1)(E).[1]

■ Appellants argue that the Federal Rules of Civil Procedure do not control the method of service here, but are superseded by the Inter–American Convention. They seek to analogize their case to *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S.Ct. 2104, 2108, 100 L.Ed.2d 722 (1988), where the Supreme Court noted that the Hague Convention on the Service of Judicial and Extra-judicial Documents in Civil Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (the "Hague Service Convention") "preempts inconsistent methods of service prescribed by state law in all cases to which it applies."[2]

■ The analogy is incomplete. The Hague Service Convention is a multilateral treaty which was ratified by the Senate. *See Schlunk*, 108 S.Ct. at 2107. By contrast, the Inter–American Convention was unratified at the time the SEC served its summons and complaint upon appellants.[3] An unratified treaty has no force until ratified by a two-thirds vote of the Senate. U.S. Const. art. II, cl. 2; *In re Sutherland*, 53 F. 551, 552 (D.Or.1892). The unratified Inter–American Convention could not supersede the Federal Rules of Civil Procedure with respect to service of process.

Appellants cite *United States v. Pink*, 315 U.S. 203, 230, 62 S.Ct. 552, 565, 86 L.Ed. 796 (1942), for the proposition that even if the Inter–American Convention was unratified at the time of service and therefore did not have treaty status, it acquired the force of law when the President signed it on behalf of the United States on April 15, 1980. This reliance upon *Pink* is misplaced. *Pink* involved an executive agreement and not a treaty. Moreover, the President contemplated that the Inter–American Convention would not have an

---

1. Because appellants received actual notice of the action pending against them, they cannot challenge the order on due process grounds. *See, e.g., Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

2. Appellants cannot rely on the Hague Service Convention since Mexico was not a signatory to that treaty at the time they were served with process by the SEC.

3. The Senate has subsequently ratified the Inter–American Convention and its protocol. *See* VIII *Martindale–Hubbell Law Directory*, Part 7, 40 (1989) (Inter–American Convention and Protocol entered into force in United States on August 27, 1988). We do not decide whether the now ratified treaty supersedes the Federal Rules of Civil Procedure with respect to foreign service of process.

effect until ratified. In his letter transmitting the Inter–American Convention to Congress, President Reagan expressly stated that "[w]hen ratified," the Convention would establish certain procedures to facilitate international judicial cooperation. Treaty Doc. 98–27, Inter–American Convention on Letters Rogatory, with Protocol (June 25, 1984).

### B

██ Appellants also argue that the SEC service was improper because it violated international law. They point to language in *FTC v. Compagnie de Saint–Gobain–Pont–a–Mousson*, 636 F.2d 1300, 1313 (D.C.Cir.1980) *("Compagnie")*, which states that:

> When compulsory process is served [on a foreign citizen on foreign soil] ... the act of service itself constitutes an exercise of one nation's sovereignty within the territory of another sovereign. Such an exercise [absent consent by the sovereign nation] constitutes a violation of international law.

*Accord Commodity Futures Trading Commission v. Nahas*, 738 F.2d 487, 494 n. 14 (D.C.Cir.1984).

*Compagnie* is distinguishable by its own terms. In *Compagnie*, the court recognized that an investigatory subpoena issued by the FTC is a form of compulsory process and, as such, cannot be served by mail without violating the sovereignty of another nation. The court explicitly recognized, however, that when a government agency "issues and serves a formal complaint upon a respondent, charging him with violation of one or more of the statutes it administers, the purpose of service is primarily *notice,* rather than *compulsion.*" *Compagnie*, 636 F.2d at 1311 (emphasis in original). The *Compagnie* court then noted that "Fed.R.Civ.P. 4, which governs service of process, is primarily concerned with effectuating notice." *Id.* at 1312 (footnote omitted). Since the SEC complied with Fed.R.Civ.P. 4 in this case, service of process was effective and not precluded by *Compagnie.*

### III

██ Appellants further argue that even if the district court has jurisdiction over them, it does not have the "judicial power" to enforce its order granting the SEC's motion for a preliminary injunction and an accounting. We disagree.

██ The power to grant a preliminary injunction which freezes assets is among the district court's inherent equitable powers. *FTC v. Evans Products Co.*, 775 F.2d 1084, 1088 (9th Cir.1985). "Once personal jurisdiction of a party is obtained, the District Court has authority to order it to 'freeze' property under its control, whether the property be within or without the United States." *United States v. First Nat'l City Bank*, 379 U.S. 378, 384, 85 S.Ct. 528, 531, 13 L.Ed.2d 365 (1965) (freeze of assets of Uruguayan corporation with bank accounts in Uruguay); *see also Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363–64 (9th Cir.1988) (en banc), *cert. denied,* —— U.S. ——, 109 S.Ct. 1933, 104 L.Ed.2d 404 (1989).

Likewise, the court is not foreclosed from granting this type of relief. Courts have long exercised such injunctive power under the federal securities laws. *See, e.g., SEC v. Tome*, 833 F.2d 1086 (2d Cir.1987) (injunction against Swiss, Italian, and Panamanian defendants), *cert. denied,* 486 U.S. 1014, 108 S.Ct. 1751, 100 L.Ed.2d 213 (1988); *AVC Nederland v. Atrium Investment Partnership*, 740 F.2d 148 (2d Cir. 1984) (Dutch citizens involved in Dutch limited partnership); *Des Brisay v. Goldfield Corp.*, 549 F.2d 133 (9th Cir.1977) (Canadian corporation). They have also frequently used their equitable powers to require foreign defendants to perform acts overseas, such as the disgorgement of illegal profits. *See, e.g., Tome*, 833 F.2d at 1096 (disgorgement from Swiss, Italian, and Panamanian defendants); *SEC v. Capital Growth Co., S.A.*, 391 F.Supp. 593 (S.D.N.Y.1974) (disgorgement from defendant Panamanians and Costa Ricans). If a court can order an overseas person to disgorge money, *a fortiori*, it can order such a person to perform an accounting the purpose of which is to identify assets subject to disgorgement.

Appellants' argument that the district court had no power to issue an injunction because it could not enforce it is meritless. Appellants cite *Hamilton v. MacDonald*, 503 F.2d 1138, 1146 (9th Cir.1974), for the proposition that a court of equity will not issue an unenforceable injunction because it cannot discover violations of the decree and does not have the means to punish the disobedience once discovered. But this is simply not the case here. While enforcement might be difficult, "the district court possesses an ample reservoir of power to command respect for its orders." *Hamilton*, 503 F.2d at 1146. The court can, as in this case, issue an order of contempt, which could be enforceable by fine or arrest.[4] Certainly the SEC could seek the assistance of foreign courts to enforce a United States court judgment.

## IV

This court reviews for abuse of discretion a district court's decision to impose sanctions or punishment for contempt. *Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir.1984). Because service of process was proper and personal jurisdiction lay over the defendants, the district court did not abuse its discretion when it held appellants in civil contempt for their violation of the preliminary injunction. *See Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir.1983) (a district court has the power to adjudge in civil contempt any person who willfully disobeys a specific and definite order of the court).

AFFIRMED.

---

**4.** The SEC notes that appellants have assets in the United States which are subject to the freeze order and which would presumably be available to satisfy a fine.