SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

BEISINGER INDUSTRIES CORPORA-
TION et al., Defendants.

Civ. A. No. 75–4660–M.

United States District Court,
D. Massachusetts.

Aug. 5, 1976.
Supplemental Order Sept. 1, 1976.

David Belkin, Jeffrey S. Rosen, SEC, Washington, D. C., for plaintiff.

Ronald F. Kehoe, Haussermann, Davison & Shattuck, Boston, Mass., for defendants.

## MEMORANDUM IN CONNECTION WITH ORDER APPOINTING SPECIAL AGENT

FRANK J. MURRAY, District Judge.

This case under the federal securities laws came on to be heard on plaintiff's motion for appointment of a Special Agent. The plaintiff (SEC) brought the action in the United States District Court for the District of Columbia to enjoin defendants Beisinger Industries Corp. ("registrant"),[1] Beisinger Industries of Canada ("Canada"),[2] BIC International Establishment ("Establishment"),[3] Court J. Beisinger and Jeanette H. Beisinger (the "Beisingers")[4] from violations of the anti-fraud and reporting provisions of the federal securities laws. In addition the SEC sought appointment of a "Special Master",[5] an accounting, and disgorgement of certain funds. On October 7, 1975 Judge Gesell entered a preliminary injunction, consented to by counsel for certain of the defendants,[6] against the regis-

---

1. The registrant is a Delaware corporation with general offices in Taunton, Massachusetts. It had 4,917,766 shares of common stock outstanding on December 31, 1975 with 942 record holders of the common stock as of that date. It is subject to the reporting requirements of the Securities Exchange Act of 1934, as amended. Sections 12(g) and 13(a), 15 U.S.C. §§ 78*l* (g), 78m(a).

2. Canada is a Canadian partnership owning 91.6 percent of the registrant's common stock. The Beisingers own a significant interest in Canada.

3. Establishment is a Liechtenstein based holding company which the registrant identified as owning 100 percent of Canada in 1973 and 1974. The Beisingers have denied in their answer that Establishment owns Canada and state that they do not know the present location of Establishment.

4. Court J. Beisinger is the president, chairman of the Board and chief executive officer of the registrant. Jeanette H. Beisinger is a director and secretary, treasurer and vice-president of the registrant.

5. The SEC denominated the officer they sought to have appointed as a "Special Master" in their complaint. Subsequently, the SEC changed the designation to "Special Agent" to avoid confusion with the term "Special Master" as used in Fed.R.Civ.P. 53.

6. The October 7, 1976 Order was entered against the registrant, Canada and the Beisingers. Subsequently, after counsel for the defendants stated that he did not represent Canada, Judge Gesell, having found that proper service had been made on Canada and Establishment and that neither had made a timely answer, entered default judgment against Canada and Establishment on October 23, 1975.

The defendants are now represented by new counsel who has filed a motion on behalf of Canada for relief from the default. New counsel does not purport to represent Establishment.

New counsel for the registrant, Canada and the Beisingers has also filed a motion to dismiss or in the alternative to quash the returns of service on the grounds that these defendants "are not citizens or residents of the United States; were not and are not doing business

trant, Canada and the Beisingers. Judge Gesell's order enjoined those defendants from fraudulent activities in connection with the purchase and sale of securities, mandated full and timely compliance with the disclosure provisions of the federal securities laws and prohibited certain transactions by the defendants pending final determination of the merits of this action.

On October 23, 1975 Judge Gesell transferred the case, pursuant to 28 U.S.C. § 1404(a), to this court. In his order transferring the case he stated:

> The Court is of the view, based on the material presently before it, that some form of immediate additional relief to assure adequate supervision of defendants may be desirable to supplement the existing preliminary injunction, but the decision whether to appoint a special advisor or fashion other supplementary relief should rest with the transferee court.

During the October 22, 1975 hearing on the SEC's motion for a Special Agent, in which he indicated his intention to transfer this case, Judge Gesell observed: "I don't see the instant urgency (for the appointment of a Special Agent). There is a decree outstanding and there is a slight presumption even these days that a decree will be followed".[7]

This court set the matter down for argument on plaintiff's motion for appointment of a Special Agent on November 14, 1975. Thereafter, on the representations of counsel for certain defendants that efforts at settlement were being made the court postponed further hearings. After counsel informed the court that settlement negotia-

tions had not been fruitful, the matter was set down for further hearing on March 18, 1976. At the conclusion of the March 18 hearing the SEC was instructed to file proposed findings of fact and conclusions of law. The court also granted the defendants similar opportunity. After reviewing the proposed findings and conclusions submitted by the parties, the court on May 6, 1976 ordered:

> 1) that on or before June 1, 1976 defendant Beisinger Industries Corp. file with the court a copy of its SEC Form 10–K for 1975, and thereupon 2) that on or before June 15, 1976 the plaintiff file any comments it has prepared regarding the compliance of Beisinger Industries Corp.'s SEC Form 10–K with the disclosure requirements of the Securities Exchange Act of 1934.

The parties have complied with the court's May 6 order and the defendants have filed a response to the SEC's comments. The SEC has in turn filed a reply to that response.

The SEC presents two claims in this case. First, the SEC contends that from 1973 to 1975 the defendants misappropriated $1,459,237 in the form of "advances" by the registrant to Beisinger International Corporation, S.A., Luxemburg ("International").[8] This diversion of over one half of the registrant's assets together with an alleged failure to disclose the diversions and related transactions and events fully and fairly is said to be in violation of certain anti-fraud provisions of the federal securities laws. Section 17(a) of the Securities Act of 1933, as amended 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of

---

within the United States; and were not and are not subject to the service of process within the District of Columbia, or within the District of Massachusetts, or by extraterritorial service". This question of jurisdiction was determined adversely to the defendants by Judge Gesell in his October 7, 1975 and October 23, 1975 Orders. The court has been made aware of no facts sufficient to justify overturning Judge Gesell's determination of this issue and declines to do so.

7. October 22, 1975 Transcript at 12–13.

8. The SEC alleges in its complaint that $1,059,-237 was advanced by the registrant during 1973 to International for the purchase of Wandplatten Fabrik Engers GmbH, a West German company. The SEC has further contended in hearings and other papers filed with the court that in 1974 an additional $400,000 was advanced by the registrant to International for the purchase of Turnwald GmbH, another West German company. The complaint has not been amended to reflect the Turnwald allegation.

1934, as amended (the "Exchange Act") 15 U.S.C. § 78j(b) and SEC Rule 10b–5 thereunder, 17 C.F.R. 240.10b–5. Second, the SEC contends that the defendants caused the registrant from 1973 to the present to fail to make timely and adequate filings as required under the periodic reporting requirements of the Exchange Act. Section 13(a) of the Exchange Act, as amended, 15 U.S.C. § 78m(a). Both claims were addressed by Judge Gesell's Order of October 7, 1975 which, *inter alia*, preliminarily enjoined continued violation of the anti-fraud and reporting provisions.

The SEC's motion for additional equitable relief must be considered in light of the operation of the preliminary injunction on the activities of the defendants. With respect to the first claim, violation of the anti-fraud provisions, no further allegations of misappropriation and diversion of the registrant's assets since Judge Gesell's October 7 Order was entered have been tendered by the SEC. However, the SEC does not concede that there have been no further improper transactions. Rather the SEC argues forcefully that in the absence of compliance with the reporting requirements by the registrant it is impossible to determine whether there have been additional violations of the anti-fraud provisions. Consequently it is in respect of the second SEC claim, violation of the reporting provisions, that the need, if any, for additional equitable relief at this time must be found.

■ The registrant is required under Section 13 of the Exchange Act to make certain periodic reports to the Securities and Exchange Commission.[9] The reporting requirements were designed to insure that investors would have available adequate information upon which to base their judgment whether to buy, sell or hold a registrant's securities. The reporting is, in addition, of benefit to those creditors who are considering transactions with the reporting companies not involving the purchase and sale of statutory securities. The periodic reporting requirements, in short, are a crucial element in the federal government's efforts to maintain the integrity of the nation's financial markets. *See generally* Cohen, *"Truth in Securities" Revisited*, 79 Harv.L.Rev. 1340 (1966).

■ It is clear that prior to the imposition of the October 7 Order, the registrant had failed to provide timely reports to the SEC under the Exchange Act.[10] Further, putting to one side at this stage the question whether the registrant's reports were materially misleading in connection with the SEC's anti-fraud cause of action, it is also clear that the registrant's annual reports were inadequate to meet the periodic reporting requirements because of their failure to provide fully audited financial

9. Under Sections 12(g) and 13(a) of the Exchange Act, a company with assets exceeding $1 million and a class of equity security held of record by 500 or more shareholders is required to register those securities with the SEC and comply with the periodic reporting requirements. Thus the registrant with 942 record holders is well within the class of companies Congress sought to reach by section 12(g).

10. Listing only those reports actually filed by the registrant the following delinquencies appear:

| Report | Required Filing Date (on or about) | Date Filed | Approximate No. of Days Report Delinquent |
|---|---|---|---|
| 8–K for Feb. 1973 | Mar. 10, 1973 | Apr. 30, 1973 | 50 |
| 10–K for Dec. 31, 1972 | Mar. 31, 1973 | May 21, 1973 | 51 |
| 10–Q for Mar. 31, 1973 | May 15, 1973 | June 14, 1973 | 29 |
| 10–Q for June 30, 1973 | Aug. 15, 1973 | Sept. 18, 1973 | 34 |
| 10–Q for Sept. 30, 1973 | Nov. 15, 1973 | Dec. 3, 1973 | 18 |
| 10–K for Dec. 31, 1973 | Mar. 31, 1974 | Nov. 11, 1974 | 225 |
| 10–Q for Mar. 31, 1974 | May 15, 1974 | Nov. 11, 1974 | 207 |
| 10–Q for June 30, 1974 | Aug. 15, 1974 | Nov. 11, 1974 | 56 |
| 10–K for Dec. 31, 1974 | Mar. 31, 1975 | June 2, 1975 | 62 |

statements.[11] These were not mere technical deficiencies but rather were serious violations of the periodic reporting requirements. The failures to provide timely reports and adequate financial information are offensive to the central purpose of the periodic reporting system Congress established through the Exchange Act. For the system to work properly the information reported must be both current and adequate. The registrant's filings prior to the imposition of Judge Gesell's October 7 Order mandating adequate disclosure on a timely basis were neither.

During the course of the hearings and in papers filed with the court, counsel for defendants maintained that the registrant's prior failures to comply with the reporting requirements had been caused, in part, by questionable advice rendered by their independent auditors. This difficulty, counsel contended, had been remedied by the engaging of a different firm of certified public accountants. To permit defendants a full opportunity to demonstrate their determination to remedy their own errors, the court reserved action on the motion for appointment of a Special Agent until it had

an opportunity to examine the registrant's SEC Form 10–K for 1975, the first annual report to be submitted after the October 7 Order was entered. The court has examined the 1975 Form 10–K and determines that it also is neither timely nor adequate. The 1975 Form apparently was not filed until three months after the date it was due at the SEC and then only in response to a specific order of this court.[12] Further, the registrant continues to place restrictions on the accountants preventing a full audit of the corporation particularly with reference to the alleged misappropriations in the form of "advances" of over half the registrant's assets to Beisinger International Corporation.[13] The registrant continues its pattern of conduct failing to comply with the reporting requirements. It is, in addition, now flouting an explicit court order requiring compliance. In light of the conduct of the defendants in derogation of the existing injunction, additional equitable relief is necessary.

There can be little doubt of the power of the court to fashion such remedial relief as may be required to effectuate the purposes of the federal securities laws and

---

**11.** The registrant's accountants for the 1973 and 1974 Form 10–K, Wolf and Company, disclaimed any expression of opinion on the 1973 and 1974 financial statements in part because of instructions from the registrant's management that the scope of the accountants' examination not include auditing procedures with respect to the advance to International.

Congress delegated to the SEC the power to set standards for the financial statements to be included in the annual reports on Form 10–K. 15 U.S.C. § 78m(a). The SEC requires audited financials. 17 C.F.R. 240.13a–1; Form 10–K, Instructions as to Financial Statements. The term audit is defined by the SEC as "an examination of the statement by an accountant in accordance with generally accepted auditing standards for the purpose of expressing an opinion thereon". 17 C.F.R. 210.1–02(d).

The required audit was clearly not performed in connection with the 1973 and 1974 Form 10–K's because of the instructions given the accountants by the registrant's management.

**12.** Counsel for the defendants has submitted an affidavit by Colene Alves, general manager of the registrant, in which she details medical problems she experienced in the Spring of 1976. Counsel implies that the delinquency in the 1975 Form 10–K is the result of the illness,

since Colene Alves was the officer of the corporation charged with supervision of financial and accounting operations. The 1975 Form 10–K, however, is the first in three years signed by Colene Alves. The previous forms have been signed by Jeanette Beisinger, an officer of the corporation under court order requiring her to see that the forms were filed on a timely basis. Accordingly, the court disregards the Alves affidavit as irrelevant.

The defendants also submitted to the court a copy of their SEC Form 10–Q for the quarter ended March 31, 1976, although not ordered to do so by the court's order of May 6, 1976. This quarterly report, for which audited financial statements are not required, appears to have been filed on a timely basis with the SEC. However, even this report contains a disclaimer on its cover page that the registrant has not "filed all reports required to be filed . . . during the preceding 12 months . . .".

**13.** The new accountants for the registrant, Clarence Rainess & Co., have declined to express an opinion on the 1975 financial statements in part because of management's instructions to them not to audit the International advances. *See* n.11 *supra*.

to provide effective enforcement of its decrees. *See SEC v. Shapiro*, 494 F.2d 1301, 1308–09 (2d Cir. 1974); *Chris Craft Industries v. Piper Aircraft Corp.*, 480 F.2d 341, 390–91 (2d Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 232, 38 L.Ed.2d 148 (1973); *see generally* Comment, *Court-Appointed Directors: Ancillary Relief in Federal Securities Law Enforcement Actions*, 64 Geo.L.J. 737 (1976); Comment, *Equitable Remedies in SEC Enforcement Actions*, 123 U.Pa.L. Rev. 1188 (1975). However, the court shares the view of the Second Circuit that appointment of special agents should not necessarily follow as a matter of course requests by the SEC. *SEC v. S&P National Corp.*, 360 F.2d 741, 750 (2d Cir. 1966). Nevertheless, when a showing has been made of continued refusal by management, in the face of an existing court order, to comply with the reporting requirements of the Exchange Act, the court should not hesitate to make the appointment of a responsible officer of the court to ascertain and report on the true state of affairs of the registrant. *Cf. id.* at 750–51; *SEC v. Koenig*, 469 F.2d 198, 202 (2d Cir. 1972); *SEC v. Keller Corp.*, 323 F.2d 397, 402–03 (7th Cir. 1963).

The court has concluded that the remedial purposes of the federal securities laws and the enforcement of the existing injunctive decree are best served by the appointment of a Special Agent whose primary responsibility is to bring the registrant into compliance with the reporting requirements of the Exchange Act. As the person charged with dissemination of full, fair and timely disclosure of the registrant's affairs the agent is, of course, in a position to report to the court regarding compliance with all aspects of the October 7 Order and regarding any other matters which may require additional action by the court *pendente lite.*

### ORDER

This case under the federal securities laws came on to be heard on plaintiff's motion for appointment of a Special Agent, and thereupon, and upon consideration of the papers filed by the parties and in accordance with a memorandum to be filed it is

ORDERED that Robert A. Romero, Jr., Esquire, be and hereby is appointed Special Agent for all defendants; and it is

FURTHER ORDERED that the Special Agent shall have the power and be directed to:

(i) Retain and supervise an independent firm of certified public accountants. Once engaged, the accounting firm is hereby authorized to perform a special audit, in order to obtain financial statements of the registrant for the fiscal years ended December 31, 1973, December 31, 1974 and December 31, 1975, which comply with all applicable SEC rules and regulations.

(ii) Supervise and secure the dissemination of information to the public, and the filing of all required reports, including amendments of reports filed heretofore, in compliance with all applicable provisions of federal securities law and SEC rules and regulations.

(iii) Supervise defendants' compliance with the Order of Preliminary Injunction of October 7, 1975. The Special Agent shall receive notice of, and attend, all meetings of the Board of Directors and any committee thereof of the registrant. The Special Agent shall report to the court any and all transactions which he considers violative of the Order of Preliminary Injunction, and may seek immediately to restrain such transaction by the court.

(iv) Maintain in confidence all information tendered him in connection with his appointment as Special Agent, except as he is specifically directed otherwise by this Order; and it is

FURTHER ORDERED that defendants, their successors, agents, officers, employees and assigns cooperate fully with the Special Agent and make all relevant books, accounts, records, mem-

oranda and documents available to the Special Agent at his request; and it is

FURTHER ORDERED that the Special Agent:

(i) shall be paid such compensation and be reimbursed for such expenses (including counsel fees) by Beisinger Industries Corporation as shall be allowed by this court;

(ii) shall have the right to consult with and apply to the court for advice and direction; and

(iii) shall have the right to resign and be discharged of his obligations as Special Agent to the court; and it is

FURTHER ORDERED that this court shall retain jurisdiction over the defendants for all purposes, including, but not limited to, implementing and carrying out the terms of this Order, and modifying it upon application of the Special Agent, any party hereto or upon the court's own motion.

## SUPPLEMENTAL ORDER

To implement and carry out the provisions of the order entered August 5, 1976 appointing Robert A. Romero, Jr., Special Agent for the defendants and defining his powers and duties, it is hereby *Ordered*:

(1) That defendant Beisinger Industries shall deposit with the Clerk of this Court on or before September 8, 1976 the sum of $5000 to be held by the Clerk in accordance with the provisions of 28 U.S.C. § 2041;

(2) That the sum of $5000 shall be disbursed solely for the payment of such expenses, including the fees of accountants and counsel for the Special Agent and for compensation of the Special Agent, as the court may determine are necessary to effect the provisions of the order of August 5, 1976; and

(3) That disbursements from the sum of $5000 may be made only after specific order of the court on motion of the Special Agent after notice to parties and opportunity to be heard.